NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **LORRAINE BRYANT,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Civil Action No. 10-5771 (CCC) |
| **v.** | : | |
| | : | **OPINION** |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**CECCHI, District Judge.**

Lorraine Bryant ("Plaintiff") appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Supplemental Security Income ("SSI" or "SSI benefits") based on severe pulmonary, hypertensive, visual, and psychiatric conditions. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Plaintiff requests that the Court reverse the Commissioner's final decision or remand the case for a new hearing and decision. Plaintiff asserts that the Administrative Law Judge (the "ALJ"), and subsequently the Commissioner, erred in determining that Plaintiff was not disabled by: (1) failing to properly account for Plaintiff's non-exertional impairments when posing a hypothetical to the vocational expert (the "VE"); (2) improperly rejecting part of Plaintiff's testimony based on her lack of credibility; and (3) failing to properly assess obesity cumulatively with Plaintiff's other impairments at steps three, four and five of the ALJ's analysis. For the reasons set forth

below, this Court affirms as to argument one, and remands for further analysis as to arguments two and three.

# I. OVERVIEW

### A. Procedural History

On October 16, 2007, Plaintiff filed an application for SSI benefits alleging disability as of November 1, 2006. (R. 91.)  Plaintiff's application was initially denied on July 21, 2008, and upon reconsideration on November 13, 2008. (*Id.* at 95.)   On December 6, 2008, Plaintiff filed a written request for a hearing. (*Id.* at 96.)  On February 9, 2010, a hearing was held before Administrative Law Judge Joel Friedman (the "ALJ"). (*Id.* at 19.)  On March 24, 2010, the ALJ issued a decision denying SSI benefits on the ground that Plaintiff is not disabled because she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 7.)  Plaintiff sought Appeals Council review, but the Council found no grounds for appeal. (*Id.* at 6.)

### B. Background

Plaintiff is fifty years old, though she was forty-seven upon filing for SSI benefits and asserting disability.  Plaintiff graduated from high school and was trained in cosmetology. (R. 25.)  Plaintiff worked briefly in her family's hair salon and ultimately worked from home thereafter. (*Id.*)  Additionally, Plaintiff worked as a salesperson for approximately two years, but ceased working due to complications created by her medical impairments. (*Id.* at 39-41.)  Plaintiff is currently unemployed, receives welfare benefits and food stamps, and resides with her mother and eighteen year old son who currently receives SSI benefits. (*Id.* at 28.)

### C. Plaintiff's Physical Impairments and Treatment

Plaintiff's primary medical impairment stems from shortness of breath.  During a medical visit on June 11, 2007, treating physician Dr. Oscar Verzosa noted that Plaintiff was experiencing wheezing, a productive cough, and difficulty breathing. (R. 262.) Additionally, Plaintiff's medical records indicate that she visited Trinitas Hospital on March 18, 2008, for difficulty breathing. (*Id.* at 179.)  The differential diagnosis from Plaintiff's hospital visit reports a possibility of "acute or chronic bronchitis, bronchiectasis, chronic obstructive pulmonary disease, viral pleuritis, [and] pneumothorax." (*Id.* at 183.)  Patient's diagnosis upon discharge from Trinitas Hospital was "bronchitis with asthma." (*Id.* at 198.)

Similarly, during a consultative examination administered by Dr. Rambhai Patel, Dr. Patel observed Plaintiff wheezing. (R. 219.)  Dr. Patel further noted an impression of chronic asthma with a possibility of emphysema by history. (*Id.* at 217.)  During a psychological evaluation administered by Dr. Ernesto Perdomo, Dr. Perdomo observed that Plaintiff was "short of breath throughout the evaluation." (*Id.* at 211.)  Additionally, Dr. Perdomo noted that Plaintiff's "dominant problems appear to be her severe emphysema and chronic pain," which "may significantly affect her ability to function at the job." (*Id.* at 212.)  Plaintiff has also been prescribed steroidal medication and a nebulizer to control her asthma. (*Id.* at 14, 31-32.)

On June 24, 2008, Dr. Thomas Materna conducted an eye examination for Plaintiff's disability determination. (R. 240.)  Upon administering the exam, Dr. Materna determined that Plaintiff's "uncorrected visual acuity was OD 20/30 and OS 20/39." (*Id.*) Additionally, Dr. Materna found Plaintiff to have a moderately constricted visual field.

(*Id.*)   Further exams produced results within normal limits.   Ultimately, Plaintiff was determined to be a glaucoma suspect. (*Id.*)

### D. Plaintiff's Mental Impairments and Treatment

On June 16, 2008, Plaintiff was administered a complete mental status examination by Dr. Ernesto Perdomo upon referral by the New Jersey Division of Disability Services. (R. 209.)   Dr. Perdomo noted that Plaintiff has no history of psychiatric treatment and is not on any psychotropic medication. (*Id.* at 212.)   After examination, Plaintiff was assigned a global assessment of functioning score of 70 indicating moderate symptoms, based solely on a "psychiatric mental" perspective. (*Id.*) Furthermore, Dr. Perdomo diagnosed Plaintiff with major depression without psychotic features. (*Id.*)

### E. The ALJ's Decision

The ALJ's decision began with the traditional five-step analysis for claimants soliciting SSI benefits. (R. 10-11.)   At step one of the analysis, the ALJ determined that Plaintiff had not engaged in significant gainful activity since her initial application for SSI on October 16, 2007, as Plaintiff was last employed in 2006. (*Id.* 12, 27.)

At step two, the ALJ applied 20 CFR 416.920 to determine whether Plaintiff has any severe impairments. (R. 12.)   The ALJ ultimately determined that Plaintiff has a severe disability as circumscribed by subsection (c) of the statute. (*Id.*)   Subsection (c) requires that SSI applicants be impaired by their medical condition to such an extent that their disability limits their mental and physical ability to perform basic work activities. 20 CFR § 416.920(c).   The ALJ found that Plaintiff suffers from the following severe

4

impairments: asthma, glaucoma, hypertension, obesity, depression, and a history of substance abuse. (R. 12.)

At step three, the ALJ determined that, while Plaintiff suffers from severe impairments, she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (R. 12.)  Here, the ALJ compared Plaintiff's alleged visual limitations with Listing Section 2.02: Loss of Visual Acuity. (*Id.*)  Ultimately, the ALJ determined that Plaintiff's impairment does not meet the criteria for this listing because "there is no evidence in the record that the remaining vision in her better eye after best correction is 20/200 or less." (*Id.*)  Additionally, when comparing Plaintiff's breathing difficulties to Listing section 3.03, the ALJ concluded that Plaintiff fails to meet the listing requirement because "there is no medical evidence of record indicating that she suffers from chronic asthmatic bronchitis or attacks, in spite of prescribed treatment and requiring physician intervention, occurring once every two months or at least six times a year." (*Id.*)

Similarly, the ALJ assessed Plaintiff's eligibility under Listing Sections 12.04: Affective Disorders and 12.09: Substance Addiction Disorders. (R. 13.)  Here, the ALJ determined that Plaintiff's diminished level of functioning is not severe enough to satisfy the criteria for disability based on her diagnosis of depression. (*Id.*)  While the ALJ acknowledged that Plaintiff's diagnosis of depression satisfies the criteria under paragraph A, the ALJ concluded that the record does not establish that Plaintiff's depression has resulted in at least two of the criteria in paragraph B. (*Id.*)  More specifically, the ALJ concluded that Plaintiff's depression did not result in a "marked restriction of activities of daily living; or marked difficulties in maintaining social

5

functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (*Id.*)

The ALJ then assessed Plaintiff's eligibility within the listings based on her severe impairment of obesity. (R. 13.) Here, the ALJ determined that there is no longer a listing for an obesity impairment. (*Id.*) However, the ALJ stated that Plaintiff's obesity was fully considered in determining her residual functional capacity "in accordance with Social Security Administration rulings." (*Id.*)

Having found that Plaintiff lacked impairment at step three, the ALJ employed step four of the analytical framework. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (R. 15.) Ultimately, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work." (*Id.* at 13.)

In looking at Plaintiff's asthma, the ALJ compared the treatment and medical records of Plaintiff to her description of the severity of her impairment. (R. 13.) While the ALJ noted that Plaintiff was experiencing audible difficulty breathing and was on medication to treat her asthma, the ALJ determined that there are no treating records in evidence detailing Plaintiff's asthma. (R. 14-15.) The ALJ further explained that the only treating records discussing Plaintiff's asthma were notes from a treating physician who saw Plaintiff three times in three years and hospital records that revealed that Plaintiff tested "positive for cocaine and had a normal chest x-ray." (*Id.* at 14.)

In regards to Plaintiff's glaucoma, the ALJ noted that Plaintiff does not complain of any symptoms of the disease. (R. 15.)  The ALJ further noted that while Plaintiff's medical records indicate that she has glaucoma, the records do not indicate any visual impairment as a result of the disease. (*Id.*)  Additionally, the ALJ cited the results of Dr. Thomas Materna's eye exam indicating that Plaintiff's "visual acuity without correction was 20/30 in both eyes and her near vision with correction was 20/20 in both eyes." (*Id.*)

When reviewing Plaintiff's mental impairments, the ALJ acknowledged that Dr. Ernesto Perdomo had diagnosed Plaintiff with depression. (R. 15.)  The ALJ also noted that Dr. Perdomo had determined that Plaintiff "could understand and follow instructions of moderate complexity…she was oriented to time, place and person; her concentration and long-term memory were good; she held no indications of a thought disorder or psychosis." (*Id.*)

The ALJ went on to discuss Plaintiff's testimony and her credibility. (R 15.)  Relying on the fact that Plaintiff lied to Dr. Perdomo in 2008 about recreational drugs she had taken, and had possibly lied on the stand about having been addicted to heroin, the ALJ determined that she lacked credibility. (*Id.*)  In response to Plaintiff's assertion that she would become short of breath after continuous movement of her arms, the ALJ determined that the record does not corroborate Plaintiff's alleged limitation and rejected the testimony based on Plaintiff's lack of credibility. (*Id.* at 15-16.)

The ALJ subsequently determined that physical and mental residual functional capacity assessments rendered by the state agency medical consultant should be afforded controlling weight. (R. 16.)  Based on these assessments, the ALJ concluded that Plaintiff, "can sustain concentration, persistence and pace for simple work

responsibilities" and that Plaintiff "is exertionally capable of light work." (*Id.*)  However, the ALJ determined that Plaintiff's past work as a sales representative exceeds her current residual functional capacity. (*Id.*)

At step five, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity to determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 16.)  The ALJ requested the findings of a VE and ultimately found the VE's testimony to be credible and consistent with the information contained in the Dictionary of Occupational Titles. (*Id.* at 17.)  Based on the VE's testimony, the ALJ concluded that there are sufficient jobs in the regions of New York, New Jersey, and Connecticut that an individual with Plaintiff's characteristics could perform. (*Id.*)   Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 17-18.)

## II. DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational and supported by substantial evidence. *See Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401,

91 S.Ct 1420, 28 L.Ed.2d 842 (1971)(citations omitted).   If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, 2009 U.S. Dist. LEXIS 32110, at •7 (M.D.Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620, 86 S.Ct 1018, 16 L.Ed.2d 131 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 Fed.Appx. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).   However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 Fed.Appx. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).   Where the Commissioner has rejected competent medical evidence , the ALJ must adequately explain his reasons and provide the rationale behind his decisions. *See Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).   Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. *See Curtain v. Harris*, 508 F.Supp. 791, 793 (D.N.J. 1981).   Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. § 416.927.   Overall, the substantial evidence standard is a deferential standard of review which requires deference to interferences drawn by the ALJ from the facts, if they are

supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### B. Determining Disability

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a plaintiff must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the plaintiff's physical or mental impairments must be "of such a severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*   Impairments that affect the plaintiff's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 404.1569a; *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered nonexertional. *See Sykes*, 228 F.3d at 263.  Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or

10

mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).

The Social Security Administration follows a five-step sequential evaluation to determine whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. The evaluation will continue through each step unless it can be determined, at any point, that the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263, n.2.

At step one, the plaintiff's work activity is assessed, and the plaintiff must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. If the plaintiff is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of plaintiff's medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step. At step two, the plaintiff must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). It is not severe when medical evidence shows only a

slight abnormality or minimal effect on an individual's ability to work. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010).

If the plaintiff does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).   If the plaintiff has a severe impairment, the analysis proceeds to the third step.   At step three, the ALJ must determine, based on the medical evidence, whether the plaintiff's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the impairments are the same or equivalent to those listed, the plaintiff is per se disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).   At this point, the ALJ must set forth the reasons for his findings. *Burnett*, 220 F.3d at 119.   The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. *Id.*   Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." *Id.*

When the plaintiff does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four.   At step four, the ALJ must determine whether the plaintiff's residual functional capacity enables him to perform his past relevant work. 20 C.F.R.§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   This step involves three substeps: (1) the ALJ must make specific findings of fact as to the plaintiff's residual functional capacity (RFC); (2) the ALJ must make findings of the physical and mental demands of the plaintiff's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the plaintiff has the capability to

perform the past relevant work. *Burnett*, 220 F.3d at 120.   The Social Security Administration often classifies residual functional capacity and past work by physical exertion requirements from "sedentary" to "very heavy work." *See id.;* 20 C.F.R. §§ 404.1567, 404.967.  If the plaintiff can perform his past work, the ALJ will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the plaintiff lacks the residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on the plaintiff's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that the plaintiff can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   During this final step, the burden lies with the government to show that the plaintiff is not disabled by demonstrating that there is other substantial, gainful work that the plaintiff could perform, given his age, education, work experience and residual functional capacity. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Sykes*, 228 F.3d at 263.  If the Commissioner cannot show there are other jobs for the plaintiff in the national economy, then the plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

### C. Plaintiff's Arguments on Appeal

In the instant matter, Plaintiff asserts that the ALJ committed three errors that require this Court to reverse the ALJ's decision or, in the alternative, to remand the case for reconsideration.  First, Plaintiff argues that the ALJ erred at step five of his evaluation by presenting a hypothetical to the VE that presumed Plaintiff's capability for light work. (Pl. Br. 34.)  In support of this argument, Plaintiff contends that the ALJ failed to present

Plaintiff's concentration deficits to the VE even though he found them to exist. (*Id.*) As such, Plaintiff asserts that the ALJ failed to convey to the VE all credibly established limitations. (*Id.*)

Next, Plaintiff argues that the ALJ erred by rejecting Plaintiff's assertion that continuous movement of her arms would leave her short of breath. (Pl. Br. 34-35.) Plaintiff asserts that the ALJ should not have rejected her testimony for lack of credibility. (*Id.* at 35.) Plaintiff notes that the ALJ challenged her credibility based on the fact that she lied to a doctor about prior drug use and may have lied on the stand about previously being addicted to heroin. (*Id.*) Plaintiff further argues that the ALJ wrongfully rejected evidence and observations based solely on these questions of credibility. (*Id.*)

Finally, Plaintiff argues that the ALJ erred by failing to assess obesity cumulatively with other impairments in order to determine the existence of a "medical equivalence." (Pl. Br. 36.) Plaintiff notes that the Commissioner's regulations require the ALJ to "determine whether the combination of impairments is medically equal to any listed impairment." (*Id.* at 36-37.) Plaintiff asserts that the combination of her impairments would satisfy the listings given the aggravating affect her obesity has on her pulmonary problems. (*Id.* at 38.)

### i. *The ALJ's Hypothetical Satisfies the Standards Set Forth by the Third Circuit*

Plaintiff first argues that the ALJ erred in failing to address all non-exertional impairments when posing the hypothetical to the VE. (Pl. Br. 34.) Plaintiff asserts that "the ALJ failed to construct a hypothetical which reasonably conveyed the extent of plaintiff's mental limitations." (*Id.*) Specifically, Plaintiff alleges that the ALJ's use of the limiting language "simple routine tasks" failed to fully convey the extent of Plaintiff's

mental impairments and that the ALJ was required to address her mental limitations with greater specificity when presenting the hypothetical to the VE.

Step five of the analysis for assessing eligibility for SSI benefits requires the ALJ to determine whether there is a significant amount of other work in the national economy that the claimant can perform. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Sykes*, 228 F.3d at 263. To ascertain the availability of work for the claimant, the ALJ often solicits the testimony of a VE. *See generally* Rutherford, 399 F.3d at 546. Upon soliciting the opinion of a VE, the ALJ must propose a hypothetical that sets forth those characteristics and limitations of the claimant that will have a bearing on the claimant's capacity for employment. *Id.* at 553. The ALJ may pose various hypotheticals and impairments to the VE, however, the testimony of the VE will only constitute substantial evidence if the question posed is an accurate portrayal of the claimant's physical and mental limitations. *Id.* at 553-554.

A hypothetical posed to a VE must incorporate all of the claimant's impairments. *Rutherford,* 399 F.3d at 554 (citing *Burns v. Barnhart,* 312 F.3d 113, 123 (3rd Cir. 2002) (quoting and adding emphasis to *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987))). This requirement does not necessitate an inclusion of "all impairments alleged by the claimant"; rather, the Third Circuit has interpreted this language to mean that the ALJ must provide a hypothetical that references those limitations on the record that can be "credibly established". *Rutherford*, 399 F.3d at 554 (citing *Plummer,* 186 F.3d at 431). Credibly established, has been interpreted to mean, that evidence which is medically supported and uncontroverted. *Rutherford*, 399 F.3d at 554. Furthermore, "limitations

15

that are medically supported but are also contradicted by other evidence in the record may or may not be found credible" upon the judgment of the ALJ. *Id.*

In the present case, the ALJ solicited the testimony of a VE to make a disability determination. (R. 17, 62.)  The ALJ posed a hypothetical to the VE that accounted for Plaintiff's age, education, and past relevant work history. (*Id.* at 66.)  The ALJ also included limiting factors, such as a need to avoid respiratory pollutants and temperature extremes. (*Id.*)  Moreover, the ALJ limited the hypothetical to jobs which would constitute light work. (*Id.*)  Finally, the hypothetical posed by the ALJ accounted for Plaintiff's credibly established mental impairments by incorporating the limitation that any jobs must be limited to "simple routine tasks." (*Id.* at 67.)

Plaintiff asserts that the hypothetical posed to the VE in the present matter did not satisfy precedential standards set forth by the Third Circuit.  Ultimately, Plaintiff contends that the inclusion of the limitation "simple routine tasks" was insufficient to account for her non-exertional impairments.  While the ALJ must account for all credibly established limitations when posing a hypothetical to a VE, the Third Circuit in *McDonald v. Astrue*, held that an ALJ may employ the language "simple routine tasks" to account for a claimant's mental deficiencies where the claimant is found to have *moderate* limitations with concentration, persistence and pace. *McDonald v. Astrue*, 293 Fed. Appx. 941, 946-947 (3rd Cir. 2008).  The court, emphasizing the severity of the claimant's mental limitations, ultimately found that the use of "simple routine tasks" in

16

the hypothetical was a sufficient means of accounting for the claimant's credibly established mental deficiencies, as the impairments were merely moderate. [1] *Id.*

In this case, the phrase "simple routine tasks" fully encompassed the mental abilities of Plaintiff.  The mental RFC examination of Plaintiff by Dr. Bruskin on June 26, 2006, resulted in a finding that Plaintiff was capable of understanding, remembering, and executing "simple responsibilities associated with the work environment." (R. 238.) The findings from Plaintiff's RFC examination are consistent with the mental assessment by Dr. Ernesto Perdomo who ultimately found that Plaintiff was able to repeat number sequences, give her social security number, and interview well. (*Id.* at 211.)   Dr. Perdomo noted in his diagnosis that any mental impairments suffered by the Plaintiff were "moderate." (*Id.* at 212.)

In the ALJ's decision, he afforded controlling weight to Dr. Bruskin's findings noting that "the claimant can sustain concentration, persistence and pace for simple work responsibilities." (R. 16.)   The evidence on the record pertaining to Plaintiff's moderate mental impairments is uncontroverted.   Accordingly, the ALJ appropriately afforded controlling weight to these medical findings.   As Plaintiff's credibly established mental

---

[1] *McDonald* served to narrow the Third Circuit's holding in *Ramirez v. Barnhart*, by distinguishing between the severity of the claimants' mental impairments in both cases. *McDonald*, 293 Fed. Appx. at 946-947.  While the claimant in *Ramirez* "*often* suffered from deficiencies in concentration, persistence, or pace," in *McDonald* the court noted that the claimant merely suffered from "*moderate* limitations with his ability to maintain concentration, persistence and pace." *Id.*  Similarly, the Third Circuit's holding in *McDonald* is consistent with the its findings in *Burns v. Barhart*, where the court determined that the phrase "simple repetitive one, two-step tasks" was insufficient to account for the plaintiff's numerous mental deficiencies given the severity of the plaintiff's mental limitations. *See Burns v. Barhart*, 312 F.3d 113 (3rd Cir. 2002).  Unlike the plaintiff in *McDonald*, the plaintiff in *Burns* was "borderline in the areas of reliability, common sense, ability to function independently, and judgment," and manifested "flightiness, disassociation, oppositional tendencies, and difficulties in comprehension." *Id.* at 123.

impairment is merely that of moderate concentration and pace deficiencies, the use of the phrase "simple routine tasks" was sufficient to convey the extent of Plaintiff's mental limitations. Accordingly, the Court upholds the ALJ's qualification of Plaintiff's non-exertional limitations. *McDonald*, 293 Fed. Appx. at 947.

### ii. *The ALJ's Credibility Determination Requires Further Analysis*

Plaintiff argues that the ALJ erred in determining that her testimony was not credible. (Pl. Br. 35.) Plaintiff asserts that her failure to disclose past drug use to the consultative examiner was not an appropriate reason for the ALJ to make a credibility determination regarding her testimony. (*Id.* at 36.) Plaintiff notes that the ALJ observed her breathing difficulties while she was testifying and made comments regarding her respiratory difficulties and a possible need for a follow up consultative examination. (*Id.* at 35.) Accordingly, Plaintiff contends that her prior lack of disclosure is not a legitimate reason for the ALJ to reject his own observations and the evidence on the record. (*Id.* at 36.)

Upon denying Plaintiff's claim for SSI benefits, the ALJ rejected Plaintiff's testimony. The ALJ determined that Plaintiff's failure to divulge her past drug use to the consultative examiner and her failure to acknowledge the possible extent of her heroin addiction while testifying made her testimony incredible. (R. 15.) In making the decision to reject Plaintiff's testimony, the ALJ also noted that Plaintiff's response regarding the exacerbation of her breathing problems from continuous arm movement was not supported by medical evidence. (*Id.* at 16.)

In reviewing an ALJ's credibility finding, it is important to note that an ALJ's credibility determination is a finding of fact and a court is bound by the finding so long as

it is "supported by substantial evidence in the record." *Knepp v. Apfel,* 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  In coming to his decision, the ALJ can give credit to portions of the evidence before him, but "cannot reject evidence for no reason or for the wrong reason." *Rutherford*, 399 F.3d at 554. Thus, in rejecting testimony for lack of credibility, the ALJ must support his conclusion with substantial evidence from the record.

For testimony to be deemed credible or to be given weight "lay evidence need not be corroborated by contemporaneous medical evidence." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 548 (3rd Cir. 2003).  Additionally, subjective complaints should not be disregarded based solely on a lack of objective evidence. *Id.*  In his assessment, an ALJ must give "serious consideration" to a claimant's subjective complaints. *Burns*, 312 F.3d at 129.  Nonetheless, "[t]he ALJ has discretion to evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent" of the severity of the claimant's symptoms.  *Cerrato v. Comm'r of Soc. Sec.*, 386 Fed. Appx. 283, 286 (3d Cir. 2010) (internal quotation marks and citations omitted).  Furthermore, subjective statements regarding the severity of symptoms alone are sufficient to find disability. *Id.*

Here, the record is void of evidence to support the ALJ's credibility determination.  Upon questioning the Plaintiff about her breathing condition, the Plaintiff stated that repetitive movement of her arms would exacerbate her respiratory condition. (R. 57.)  The ALJ rejected this testimony due to Plaintiff's lack of disclosure regarding recreational drug use.  While an ALJ may, in his discretion, consider factors such as

19

inconsistencies in testimony to impugn the credibility of a witness, these determinations must be supported by evidence on the record.  While the ALJ did note in his opinion that the testimony in question was not supported by objective medical evidence, the ALJ failed to indicate what evidence he was using to reject the Plaintiff's subjective complaints regarding her breathing difficulties.

During the hearing, the ALJ noted that Plaintiff was experiencing audible breathing difficulties, and ultimately confirmed this observation in his decision. (R. 15, 52.)  The ALJ also noted that Plaintiff used her respiratory medication while testifying. (*Id.* at 54.)  Additionally, the ALJ stated that he was "tempted" to order an internal CE because the medical exams before him contained deficiencies. (*Id.* at 61.)  Plaintiff was then questioned as to whether repeated movement of her arms would serve to exacerbate her medical condition, which resulted in an affirmative response from the Plaintiff. (*Id.* at 57.)

Plaintiff's medical records indicate that she has a history of respiratory problems. Upon Plaintiff's visit to Trinitas Hospital on March 18, 2008, she was given a differential diagnoses noting a possibility of "acute or chronic bronchitis, bronchiectasis, chronic obstructive pulmonary disease, viral pleuritis, [and] pneumothorax." (R. 183.)  Upon discharge, Plaintiff was diagnosed with "bronchitis with asthma." (*Id.* at 198.) Additionally, Plaintiff's consultative physician Dr. Rambhai C. Patel noted an impression of chronic asthma with a possibility of emphysema by history. (*Id.* at 217.)  Thus, there was a wealth of evidence on the record that corroborated the existence of a respiratory condition.

In light of this evidence, the ALJ failed to indicate his grounds for concluding that the Plaintiff's testimony was not credible. The ALJ noted his observation of Plaintiff's breathing problems while she was testifying thereby indicating that Plaintiff suffers from respiratory difficulty while in a stationary, seated position. However, the ALJ did not mention why he found his own observations to be irrelevant. Additionally, the ALJ did not indicate in his decision how he determined Plaintiff's subjective complaints to be incredible given the deficiencies he found in the medical records before him. The ALJ must present substantial evidence for his findings and must explain why certain evidence was rejected or deemed irrelevant. *See Burns*, 312 F.3d at 129. Accordingly, the Court remands the case for further analysis as to why Plaintiff's subjective complaints are not credible in light of the ALJ's own observations and the medical evidence before him.

### iii. The ALJ's Assessment of Plaintiff's Obesity Was Not Consistent with the Standards Set Forth by the Third Circuit

Plaintiff next asserts that this Court should find error in the ALJ's failure to assess the combined effect of Plaintiff's severe impairments. Plaintiff asserts that this comparison is mandatory, and that an ALJ must assess the interaction of all medical impairments to determine whether a claimant's ailments qualify as a medical equivalence. Furthermore, Plaintiff contends that this comparison must be made at step three and all subsequent steps.

The Third Circuit addressed this issue in *Diaz v. Comm'r of Soc. Sec.*, where an ALJ found a severe obesity impairment at step two, but failed to assess the impact of obesity on the claimant's other impairments at step three. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3rd Cir. 2009). The court in *Diaz* noted the Commissioner's modification to the listings regarding obesity in 2000, and explained that this

modification served to replace "the automatic designation of obesity" based on height and weight with an "individualized inquiry." *Id.*  This inquiry is meant to focus on "the combined effect of obesity and other severe impairments." *Id.*  Thus, the court determined that "an ALJ must *meaningfully consider* the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Id.* at 504 (emphasis added).

In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain his reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Diaz*, 577 F.3d at 504.  The court in *Diaz* notes that obesity can exacerbate other impairments, especially respiratory limitations. *Id.* at 503.  These determinations by the Third Circuit necessitate a meaningful discussion of the combined effect of a claimant's impairments in order to engage in an appropriate obesity inquiry.

Here, the ALJ determined that Plaintiff's obesity qualified as a severe impairment at step two. (R. 10.)  The ALJ then addressed Plaintiff's obesity at steps three and four. (*Id.* at 13, 15.)  At step three, the ALJ noted that there is no longer a listing for obesity and stated that "[obesity] has been fully considered in reaching the residual capacity described herein." (*Id.* at 15.)  The ALJ then repeated this same tacit acknowledgment of an obesity assessment at step four. (*Id.*)  However, the ALJ did not go beyond this statement to explain his analysis of Plaintiff's obesity limitation.  Thus, "the ALJ's analysis is inadequate because it is conclusory and does not set forth the reasons" for the decision. *Padilla v. Astrue*, 2011 WL 6303248 *7 (D.N.J. Dec. 15, 2011).  Accordingly, the Court remands for further analysis as to the impact of Plaintiff's obesity on her other impairments at step three and all subsequent steps.

**III. CONCLUSION**

The Court affirms the ALJ's decision in part, and remands for the ALJ to provide further analysis regarding his credibility determination.   In addition, the matter is remanded for the ALJ to complete his assessment of Plaintiff's obesity impairment in a manner that is consistent with the Court's findings contained herein.   An appropriate Order accompanies this Opinion.

Dated:  February 29, 2012                          _____*s/Claire C. Cecchi*_____
                                                   CLAIRE C. CECCHI
                                                   United States District Judge